(Wood County Ohio Common Pleas.)
SIMON HAMILTON v. THE OHIO OIL COMPANY.

---

*Gas and Oil Lease—Action by lessor against lessee for damages for failure to operate land leased properly and sufficiently—Protection of land as against wells on adjoining land—What the jury should consider.*

---

CHARGE OF THE COURT.

TAYLOR, J.:

Gentlemen of the Jury:

The construction which the law gives to the lease in question, is such that it would require the defendant to put down as many wells as may be reasonably necessary to secure the oil for the benefit of the parties to the

lease and to protect the lines of plaintiff's lands, and to drill the wells to the proper depth. Now the plaintiff alleges that the defendant has not drilled a sufficient number of wells to extract the oil, nor has it located them so as to properly protect his lines, and that by reason of the failure and negligence of the defendant to do its duty in that regard the plaintiff has been damaged, and, he asks a verdict at your hands for damages which you may find he has sustained. The defendant denies these allegations of fact and the burden of proof is upon the plaintiff to show by a preponderance of the evidence that what he says is true.

If the plaintiff has not so shown, then you should return a verdict for the defendant.

Now, in the determination of this question you encounter a very difficult proposition. The question so far as I know, has until this time, never been submitted to a jury of Wood county nor the state of Ohio. It is not only difficult, but very important, not only to the parties engaged in this suit, but to all persons engaged in oil operations, and the owners of the lands operated. It makes it necessary that you base your conclusions purely upon the evidence as it has been given in the trial of this case.

The fact that the plaintiff is an individual and the defendant is a corporation furnishes no ground for or against either party, and should not be considered by you.

Then, gentlemen, in determining whether or not the Ohio Oil Company did properly operate this lease, you must reach your conclusions largely from circumstances offered as evidence in the case, and where there is evidence tending to support it or show it, you can take into consideration the form and shape of this particular piece of land, the number of oil wells upon it and their location; you can consider its contiguity to adjoining lands, the oil wells upon those lands and their location. You can take into consideration so far as the evidence warrants it, the nature of this particular piece of land, and the adjoining lands. I mean for oil purposes, whether or not the sand is close or compact or whether it is loose and porous. From these circumstances also you will take into consideration the amount of oil that has been produced upon this piece of land and upon other pieces of land. From these circumstances and any others that may aid you, you are to determine whether or not this company drilled a proper number of wells upon this piece of land. It does not necessarily follow that if a well is put down upon a piece of land adjoining, that there must be a well put down at a certain place on this piece. You cannot conclude that because a certain amount of oil may have been drawn from another piece of land, that the same amount should have been drawn from this piece of land; but you should take into consideration the amount of operations upon other pieces of land to assist you in determining what this company ought to have done upon this piece of land. If a thousand barrels of oil were taken from an adjoining piece of land, it does not follow that a thousand barrels must be accounted for from this piece of land, but that may be a circumstance to enable you to determine whether or not this Oil Company properly operated this piece of land, and for this purpose only are you permitted to take into consideration all those circumstances which I have mentioned and any others that I may have omitted to mention, that have been brought to your attention through the testimony. These things must be determined by you from the circumstances. The oil field generally, as the testimony discloses it, may be taken into consideration by you.

Testimony has been offered, tending to show that an average oil well will drain ten acres of land, and testimony has also been offered tending to show that that general average, in certain lands and certain localities and for certain specific reasons, has been changed. All these things are to be considered by you for the purpose of determining the main question. You will give to each one of these items of

testimony such weight as in your judgment you think it deserves, and from all you must finally reach the conclusion whether or not this land has been properly developed as required by this lease.

Quite a number of things have been admitted. Those things I pass without calling your attention to them. I merely call your attention now to what I understand is necessary or decisive in the case. If you find from the evidence after a proper consideration of all those things that this Oil Company has operated that land properly under all the circumstances, then your work is done. You simply return a verdict in that case for the defendant; but, if you find from a consideration of all these things that it did not operate the land as required by the lease; that it did not do its duty in that respect, then you will turn your attention to the damages. You will then ascertain what damage has resulted to this plaintiff on account of the failure of the defendant to properly operate the lease.

The supreme court of the state of Ohio has furnished us the rule of damages in this case, and I will simply read, as my charge to you, what the rule of damages is in case you find that the Ohio Oil Company did not properly operate these lands.

*Plaintiff's request to charge—*

"Now in regard to the measure of damages I instruct you in this way: in case you find that the defendant did not use due diligence in operating plaintiff's premises, you will ascertain as well as you can from the evidence how much more oil the plaintiff Simon Hamilton, ought to have received between the dates of April 12th, 1898, and January 3rd, 1899, then he actually did receive during such period, and the value of it during the times when it should have been delivered to him; from this deduct the cost of producing what ought to have been produced at the time under the circumstances and with the appliances then known; add to this remainder the interest on it from the time when the oil ought to have been produced to the present time; this will be the measure of damages sustained by the plaintiff, and such amount will be the amount of your verdict in favor of the plaintiff."

Now gentlemen, you will discover here that you are limited in the ascertainment of the damages to a certain time, and that time, between April 12th, 1898, and January 9th, 1899. Mr. Hamilton, as I believe you all understand, was the owner of the land at that period, and if he was damaged at all, it could only have been for that period. You will be allowed to take into consideration the amount of oil that might have been produced before that time, and up to that time, not only on this piece of land, but on surrounding lands. Evidence has been offered tending to show that oil has been produced since that time, but that is only for the purpose of ascertaining what amount might have been produced upon this piece of land within that time, and you cannot count that oil that was produced before or since to increase the amount. That is, what was produced before or since that is only evidence for the purpose of showing what might have been produced at that time, and you cannot add to what might have been produced at that time anything that has been produced before or since, but you are limited strictly to that time; and if you get out of this limit, you will do wrong to one side or the other.

It is agreed by both parties that if Mr. Hamilton has been damaged at all, it is within those limits.

I wish to call your attention to, and you will have the map or plat of this piece of land, before you. It purports to give you the shape and form of the land, its boundaries, the number of wells on the land and the surrounding land, the distance of the wells from the lines, and other things. You will take into consideration that there is somewhere on that piece of land an orchard or buildings, and the lease provides that no well shall be drilled within three hundred feet of that. That becomes important, because that must be blocked out in considering whether or not this land has been sufficiently drilled. That three hun-

dred feet from this particular place must be cut out, because what is left after taking that out is what would be proper for you to consider in determining whether more wells should have been drilled or not.

Another thing is this: It has been said in your hearing that if there was a failure to drill, it was not more than two wells extra from what has been drilled. Counsel said they were only claiming for two wells more, that two wells should have been drilled.

Now then, the damage should not be more than the oil that would have been produced from these two wells, provided you are satisfied from the evidence, or a preponderance of the evidence shown you, that the two wells should have been drilled. I only mention this to show that you are limited as to the number of wells by the admission of the parties, the same as you are limited as to the number of acres and the time from which damages are to be ascertained, if you find there were any damages.

The defendant requests me to give you certain charges here which I now give you. I think I have embodied them in my general charge, but I will give them as requested.

*Defendant's request to charge:*

"First—Under this contract the number and location of the well to be drilled is left to the discretion of the defendant, and if it acted in good faith in conducting its operations, it cannot be held liable for damages for not drilling more wells, even if you should believe that wells might have been advantageously drilled at other localities than those selected."

In connection with that I want to say that the discretion of the company here as to whether or not a well should have been drilled at a certain time and at a certain place is governed largely by the condition of things as they then existed. What I mean by that is, if the production of oil upon that piece of land and upon other pieces of land at that time indicated fairly to persons understanding this business, and they acted honestly, that a certain well should not have been put down at a certain place, they would have been justified in not putting that well down at that time and place, even after developments should show that a well should have been put down. They are only to be governed and controlled by the light they then have at that time. The uncertainty of the producing of this particular and peculiar fluid developes as time passes on. At one particular time every thing may indicate that a well should be drilled at a certain place, when after indications would change that, and the company in that regard would only be governed by what it should have done under the circumstances of the particular time when it is claimed they should have drilled.

"Second—If the defendant is liable at all, it is only liable for such damage as is shown to have accrued between April 12th, 1893, and January 9th, 1899."

"Third—Even if you should find for the plaintiff, you should not assess fanciful or conjectural damages, but only such as the evidence shows that he actually sustained."

"Sixth—The defendant was not to drill on the land under this lease any more wells than could be drilled and operated by the defendant at a fair profit to itself after giving to the plaintiff the royalty provided for in the lease."

"Seventh—You should not allow the plaintiff any damages for the price of oil drained or claimed to be drained from the land by reason of operations on the adjoining lands. You can only consider the operations on adjoining lands is so far as they help you in determining the question whether the defendant has exercised due diligence in operating this land since the plaintiff became the owner of it."

And there is a very decisive point in the case.

"Ninth—The defendant, if liable at all, is only liable for some breach of duty which has occurred since plaintiff became the owner of the land, and cannot be held for anything that it may have failed to do before he became the owner of it."

Now, gentlemen of the jury, if you find a verdict for the plaintiff in this

case, having appointed one of your number foreman, you will insert the amount of your verdict in the upper part of this blank sheet here, and your foreman will sign it. Should you find a verdict for the defendant, your foreman will sign the lower part of this sheet, and you will return your verdict into court.